IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALAN SHIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 6689 |
| | ) | |
| v. | ) | Judge Amy St. Eve |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The Court denies Defendant City of Chicago's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Plaintiff's *Monell* claim as alleged in Count V of the Complaint. [31]. Status hearing set for March 21, 2018 is stricken and reset to March 12, 2018 at 8:30 a.m.

## STATEMENT

On December 20, 2017, Plaintiff Alan Shields filed the present five-count Amended Complaint against the City of Chicago and individual Chicago Police Officers bringing constitutional claims, along with a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. Before the Court is the City's motion to dismiss Plaintiff's *Monell* claim alleged in Count V pursuant to Rule 12(b)(6). For the following reasons, the Court denies Defendant's motion.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014); *see also Hill v. Serv. Emp. Int'l Union,* 850 F.3d 861, 863 (7th Cir. 2017). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to the federal pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). When determining the sufficiency of a complaint under the plausibility standard, courts accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor. *See Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017); *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

# BACKGROUND

Plaintiff alleges that he is disabled and substantially limited in the ability to move, and that during the relevant time period he required ambulatory aids because of his paraplegia. (R. 28, Compl. ¶ 5.) At 11 p.m. on June 6, 2016, Chicago Police Officers stopped Plaintiff, who was using crutches to ambulate. (*Id*. ¶ 6.) Defendant Officer Shane Coleman approached Plaintiff and ordered him to place his hands on the police vehicle. (*Id*. ¶ 7.) Plaintiff objected because he could not put down his crutches to walk. (*Id*. ¶ 8.) Defendant Coleman nonetheless searched Plaintiff, which caused him to lose balance and fall. (*Id*. ¶ 9.) While he was on the ground, Defendant Coleman handcuffed Plaintiff and then Defendant Officers Coleman and Michael McAuliffe gave him commands to stand up. (*Id*. ¶ 10.) Plaintiff repeatedly told Defendant Officers that he was paraplegic and could not stand. (*Id*.) Plaintiff alleges that Defendants Coleman and McAuliffe nonetheless dragged him to the door of the police vehicle and threw him in the backseat. (*Id*. ¶ 11.) Defendant Officers then transported Plaintiff to the Seventh District Police Station. (*Id*.)

After arriving at the Seventh District, Defendants McAuliffe and Coleman ordered Plaintiff to ambulate from the police vehicle to the station without any aid, after which Plaintiff told them he could not ambulate without his crutches. (*Id*. ¶¶ 13, 14.) Defendants Coleman and McAuliffe then summoned the attention of Defendant Sergeant Patrick Josephs and other officers, after which these officers started to drag Plaintiff into the police station. (*Id*. ¶ 15.) Immediately prior to entering the station, police removed Plaintiff's handcuffs and allowed him to use crutches to ambulate. (*Id*.)

Once in the processing room, Plaintiff asserts that Defendant Officers Coleman, McAullife, Josephs, Raul Nava, Robert Bandola, Wayne Wiberg, and Jacob Wojtaczka used unreasonable force on him. (*Id*. ¶ 16.) Plaintiff contends that the officers then handcuffed him and dragged him on the floor, which was captured on surveillance video. (*Id*. ¶ 17.) Plaintiff states that at all relevant times, Defendant Officers knew he was unable to walk without crutches. (*Id*. ¶ 18.) He also maintains that he requested medical attention due to the injuries caused by Defendant Officers' use of unreasonable force. (*Id*.) According to Plaintiff, the officers nevertheless placed him into a cell and left him on the floor without crutches. (*Id*. ¶ 19.) Thereafter, Plaintiff made numerous requests for medical attention, yet Defendant Officers failed to respond. (*Id*. ¶ 20.) Plaintiff then started a fire in his cell. (*Id*.) Plaintiff alleges that thereafter Defendant Officers took him out of the cell and "stomped" on him. (*Id*. ¶ 21.)

Subsequently, Plaintiff was transferred to Mt. Sinai Hospital where he was intubated due to a crushed larynx. (*Id*. ¶ 22.) Shortly thereafter, Defendant Officers completed paperwork, including a Tactical Response Report ("TRR"), and Defendant Lieutenant Wiberg approved the amount of force Defendant Officers used when arresting and detaining Plaintiff. (*Id*. ¶¶ 23-25.) According to Plaintiff, the Commander of the Seventh District also approved this use of force. (*Id*. ¶ 26.)

At some point later, Plaintiff requested that the Independent Police Authority ("IPRA") investigate Defendant Officers' use of force. (*Id*. ¶ 27.) To that end, the IPRA took Plaintiff's

statement, obtained the police department records relating to Plaintiff's arrest, including the surveillance video, and interviewed two members of the Chicago Fire Department. (*Id*. ¶ 28.) The IPRA, however, did not interview any member of the CPD regarding Plaintiff's allegations of misconduct. (*Id*.) The IPRA did not recommend disciple for any of the individual Defendant Officers. (*Id*. ¶ 29.)

In Count V, Plaintiff brings a claim against the City based on *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658 (1978). Specifically, Plaintiff alleges that at all relevant times, the CPD engaged in a custom or practice of using excessive force due, in part, to deficiencies in training, supervision, and accountability. (*Id*. ¶ 44.) Plaintiff maintains that the City has delegated complete responsibility to the IPRA to investigate and recommend discipline for CPD officers accused of use of excessive force and that the IPRA is understaffed and limited by the Chicago Police Officers' collective bargaining agreements ("CBAs"). (*Id*. ¶¶ 45, 46.) In particular, Plaintiff explains that the CBA with the Fraternal Order of Police bars the IPRA from interviewing accused police officers until all other investigative steps are completed and that this agreement substantially impairs the IPRA's ability to investigate police misconduct resulting in no disciple for officers who use excessive force. (*Id*. ¶ 46.)

In addition, Plaintiff states that it is common knowledge among the CPD that misconduct complaints reviewed by the IPRA do not result in immediate discipline. (*Id*. ¶ 50.) Plaintiff further asserts that when he was detained on June 6, 2016, Defendant Officers knew the City had a policy or practice that did not hold officers accountable for their use of excessive force. (*Id*. ¶¶ 52, 53.) Also, Plaintiff states that Defendant Officers Josephs and Wiberg knew from their past experience with IPRA complaints that it was highly unlikely that the IPRA would recommend discipline for the alleged misconduct. (*Id*. ¶¶ 51, 54.) Further adding to this custom or practice, the IPRA did not request statements from the Defendant Officers (as barred by their CBAs). (*Id*. ¶ 55.) Plaintiff also highlights the United States Justice Department's ("DOJ") January 2017 Report concluding that the CPD has engaged in a custom or practice of unreasonable force, due in part, to deficiencies in training, supervision, and accountability. (*Id*. ¶ 57.) Further, Plaintiff points to the existence of a "code of silence" where Chicago Police Officers conceal police misconduct such as excessive force, including that a Police Accountability Task Force Report found that the CBAs between the police unions and the City have essentially turned the code of silence into an official policy. (*Id*. ¶¶ 47, 56.) According to Plaintiff, the above widespread custom or practice was deliberately indifferent to his rights secured by the United States Constitution and was the moving force behind his constitutional injuries. (*Id*. ¶ 58.)

## ANALYSIS

To recover under *Monell*, Plaintiff must eventually show that (1) he suffered a deprivation of a constitutional right; (2) as a result of an express policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, that was; (3) the cause of his constitutional injury. *See Glisson v. Indiana Dep't of Corr.,* 849 F.3d 372, 379 (7th Cir. 2017). As to the causation element, Plaintiff must offer evidence that the unconstitutional custom, policy, or practice was the "moving force" behind his constitutional injury. *See Daniel v. Cook Cnty.*, 833 F.3d 728, 736 (7th Cir. 2016). At this procedural posture, however, the Court need only determine whether Plaintiff has sufficiently alleged his *Monell* claim against the City

under the dictates of *Iqbal* and *Twombly*. *See White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (federal courts may not apply a "heightened pleading standard" to *Monell* claims).

In the present motion, the City argues that Plaintiff has failed to adequately allege his *Monell* claim because he only mentions a single incident, namely, the alleged excessive force surrounding his arrest and detention on June 6, 2016. In response, Plaintiff asserts that he can allege a failure to train claim based on his own experience without alleging other, similar violations. Indeed, the Supreme Court has left open the possibility that in a narrow range of failure to train cases, a plaintiff need not prove a pattern of similar violations to establish deliberate indifference. *See Connick v. Thompson,* 563 U.S. 51, 63 (2011); *Bd. Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 409 (1997); *Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989); *see also Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 929 (7th Cir. 2004) ("The Supreme Court has expressly acknowledged that evidence of a single violation of federal rights can trigger municipal liability if the violation was a 'highly predictable consequence' of the municipality's failure to act."). Outside of this exception, "*Monell* claims based on allegations of an unconstitutional municipal practice or custom—as distinct from an official policy—normally require evidence that the identified practice or custom caused multiple injuries." *Chatham v. Davis,* 839 F.3d 679, 685 (7th Cir. 2016).

That being said, the Supreme Court's discussions in *Connick*, *Brown*, *Canton,* and the Seventh Circuit's decision in *Chatham* concern proving a failure to train *Monell* claim, not pleading one. *See White,* 829 F.3d at 844. In *White*, the Seventh Circuit recognized the difference in the standards for pleading a *Monell* claim based on a widespread practice or custom and proving one. In doing so, the Seventh Circuit clarified that *Monell* claims are not subject to a heightened pleading standard in the context of allegations that the CPD has a custom or practice where police officers submit arrest warrant applications without enough information to establish probable cause for arrest. *Id*. at 839. In his complaint, the plaintiff in *White* alleged his own experience in which the officers submitted an inadequate application for his arrest warrant and also included the standard CPD form used for arrest warrants, which on its face did not require specific factual support. *Id*. at 844. Under these circumstances, the Seventh Circuit concluded that the plaintiff had sufficiently alleged a *Monell* custom or practice claim because he alleged more than his own constitutional injury based on the attached form. *Id*.; *see also Doe v. Grosch*, No. 17 C 1214, 2017 WL 3970515, at *3 (N.D. Ill. Sept. 8, 2017).

Here, Plaintiff has sufficiently alleged his *Monell* claim against the City by alleging factual details concerning the CPD's alleged widespread practice or custom of covering-up police officers' unconstitutional use of excessive force and that this practice was the moving force behind his constitutional injuries. In particular, not only has Plaintiff alleged his own Fourth Amendment excessive force injury, but he has also alleged that the Police Accountability Task Force Report and January 2017 DOJ Report highlight the deficiencies in relation to the CPD's use of excessive force that are sufficiently similar to Plaintiff's excessive force allegations – raising a reasonable inference that he is not alone in suffering constitutional injuries resulting from this alleged practice or custom. *See Iqbal,* 556 U.S. at 678 (a complaint is plausible on its face when plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *see also Catinella v. Cnty. of Cook, Ill.*, 881 F.3d 514, 517 (7th Cir. 2018) ("the complaint 'must give enough

details about the subject-matter of the case to present a story that holds together.'") (citation omitted).

Moreover, despite the City's argument to the contrary, Plaintiff's allegations – read as a whole – include more than mere legal conclusions and boilerplate language. *See Catinella,* 881 F.3d at 517-18 ("[L]egal conclusions can provide the framework of a complaint so long as they are supported by factual allegations.") (internal quotation marks omitted, citation omitted). In particular, Plaintiff gives context to his *Monell* claim by explaining that Chicago Police Officers' CBAs prohibit the IPRA from properly investigating complaints of excessive force and that by delegating responsibility to the IPRA to investigate and recommend discipline of Chicago Police Officers, the City enables the "code of silence" of covering-up police misconduct involving the use of excessive force. In addition, the City's arguments that Plaintiff's allegations do not "establish" the existence of a widespread policy are misplaced because at this stage of the proceedings, the Court must determine whether Plaintiff has stated a plausible claim for relief, not that he has "established" or "proven" his claims. *See Iqbal,* 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). For these reasons, the Court denies the City's motion to dismiss Plaintiff's *Monell* claim as alleged in Count V of the Amended Complaint.

**Dated:** March 2, 2018

_____
**AMY J. ST. EVE**
**United States District Court Judge**